Kenneth M. Gutsch
Richmond & Quinn, PC
360 "K" Street, Suite 200
Anchorage, Alaska 99501
PH:  (907) 276-5727
FAX: (907) 276-2953
kgutsch@richmondquinn.com


UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA


| | |
|---|---|
| MICHELLE V. MINOR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| LA MEX, INC., LA MEXICANA, | ) |
| INC., TRINA M. JOHNSON, RENEE | ) |
| ABELCOP, and MUNICIPALITY OF | ) |
| ANCHORAGE, | |
| | |
| Defendants | |

State District Court Case No. 3AN-06-6602 CI
U.S. District Court Case No. 3:06-cv-00101

**LA MEX DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

COMES NOW, defendants La Mex, Inc., La Mexicana, Inc.
Renee Abelcop, and Trina Johnson ("the La Mex defendants"),
and hereby move for summary judgment as to plaintiff's claims
against them.

## I. INTRODUCTION

Plaintiff, Michelle Minor, a trial lawyer of 31 years, came to La Mex's Spenard location, allegedly based on an advertisement. She ordered services from the menu, ate the food, but refused to pay the prices stated in the menu. Despite repeated requests that plaintiff pay the $44 balance to avoid police involvement, plaintiff refused. She was arrested, and the criminal case went to a trial by jury, which hung.

Plaintiff claims that La Mex's ads were misleading. However, regardless of whether such ads were misleading, plaintiff could have avoided all of her damages claims against the La Mex defendants by not ordering services from the menu she received or by paying the disputed $44 balance. Accordingly, plaintiff's claims against the La Mex defendants are barred by the doctrine of avoidable consequences.

## II. FACTUAL BACKGROUND

La Mex hired Vicki Evans, an independent contractor, to prepare promotional materials and advertisements to promote a special event with dishes (and their respective prices) from

La Mex's 1969 menu at La Mex's downtown location on April 1, 2004. (Ex. A.)

Ms. Evans designed and arranged for the production of 100 yellow posters. (Ex. A.)   Ms. Evans hung about 33 of the posters at the Spenard La Mex restaurant where plaintiff dined. (Ex. A.)   Those posters all specified that the special event would take place at the downtown location. (Ex. A-3.)

Ms. Evans also ran 87 radio advertisements specifying the downtown location. (Ex. A-4.)

Ms. Evans ran ads in the Anchorage Daily News which specified the downtown location. (Ex. A.)

Ms. Evans ran ads in the Anchorage Free Press. (Ex. A.) The first and third Free Press ads specified the downtown location for the special. (Ex. A.)   The second ad stated, **"With the prices on the menu from the day we opened."** The bottom of the ad listed La Mex's three Anchorage locations, but did not specify the location for the event. (Ex. A.) The ad did not mention the dishes that would be on sale or the prices. Id.

Ms. Minor alleges that she saw the March 11-17, 2004 ad, and relied upon in it coming to La Mex that evening. Ms.

Minor claims she saw none of the other ads, any of the 33 posters in the Spenard restaurant, or any of the 87 radio ads which specified the downtown location. Ms. Minor claims that she was mislead into thinking she would get an uncertain discount on uncertain dishes.

Ms. Minor acknowledges that when she came to La Mex at its Spenard location on the evening of April 1, 2004, she was given a menu with the regular prices.[1] Ms. Minor ordered services from the menu. It is undisputed that she did not have the subject ad with her at the time.

According to the waiter, Mike Wilson, Ms. Minor's party asked what the discounts were and Mr. Wilson told them that the special was only at the downtown location.[2] However, Ms. Minor claims that neither she nor anyone in their group ever asked about the discount when they saw the regular menu prices, and the waiter never volunteered that the discount event was limited to the downtown location.

Regardless of that factual issue, it is undisputed that plaintiff ordered from the prices in the menu she was given, and that plaintiff was given a bill corresponding to the

---

[1] Ex. B at p. 197.
[2] Ex. B at p. 10; see also Walk-Out Form, Ex. D.

LA MEX DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT
Minor v. La Mex, Inc., etc., et al., CASE NO. 3:06-cv-00101
PAGE 4

menu's prices – the only ones she had ever seen. (See bill at Ex. C; see regular menu from which plaintiff ordered, at Ex. C-1 (Affidavit of Renee Abelcop).)

Ms. Minor alleges that when she ordered, she did not intend to pay the prices that were in the menu but discounted prices at an uncertain rate on undefined dishes.[3]

In response to the bill, Ms. Minor arbitrarily wrote a check for 65% of the bill as payment in full.[4]

La Mex's manager, Renee Abelcop, insisted on payment of the $44 balance, and warned her the police could get called.[5]

Ms. Minor refused to pay the bill out of principal because she thought La Mex's March 11-17, 2004 ad was misleading. Id.

The police came and interviewed La Mex's employees and Ms. Minor; and they examined the menu from which Ms. Minor ordered. Ex. B at pp. 59-60.

Officer Bell interviewed Ms. Minor to find out her side of the story:

> Q. . . . what did [Ms. Minor] say when you
> went over and asked her about the situation?

---

[3] Ex. B at 216.
[4] Ex. B at p. 234, 235.
[5] Ablecop Affidavit, Ex. E.

A. Essentially like Ms. – the manager indicated, that Ms. Minor's problem as she indicated to me was that there was an advertisement that didn't specifically state that the prices were going to be at the downtown location only, that the loc—that the prices would indicate at all three locations for the La Mex, and that she was offering to pay what she deemed was fair for 1969 prices, and that that's all she was paying.

Q. Did you ask her which menu she used?

A. I did, because that seemed to be the issue at the time for me was a menu, because I was told by the manager that there was a specific menu apparently for the downtown location.

Q. And what was her response?

A. She told me she ordered from the regular menu and that prices were full price.[6]

Officer Bell tried to convince Ms. Minor to pay the bill and pursue a civil action against La Mex;[7] and he told Ms. Minor that he would have to arrest her if she did not:

Q. And did you explain to the defendant that – what your position was with regard to whether she should pay the bill or not?

A. Yes, I did. I mean, I explained to her that I'd be forced to arrest her if she wouldn't pay the bill in total, that – that she ordered the food at full price, she was going to have to pay the full price, and if she didn't, she'd be arrested, and she essentially said go ahead and arrest me..

Q. Okay, what did you do at that point in time?

---

[6] Ex. B at pp. 58-60.
[7] Ex. B at p.63.

LA MEX DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT
Minor v. La Mex, Inc., etc., et al., CASE NO. 3:06-cv-00101
PAGE 6

A.   At this point because I was getting a lot of resistance from someone who smelled of alcohol, was being belligerent, raising her voice, causing a scene, proclaiming to be a lawyer, I asked if she'd like to see my supervisor because sometimes supervisors can say – the same thing and – I – I – I got the impression she felt she was above me and wanted someone superior to me.

Q.  And what happened at that point?

A.   I called my supervisor [Sergeant Leblanc] to come over and talk with Ms. Minor.

. . .

Q.  Did your supervisor in fact show up?

A.  Yes, he did.

Q.  Were you a party to that conversation?

A.   Between the two? I was standing there, yes.

Q.  Yes and what did he state to her?

A.  He – he – he went through the same thing that I did.

. . .

Q.   What did the defendant state in your hearing relative to intent?

A.   That she wasn't going to pay the bill, and again challenged him to arrest her.[8]

Sergeant Leblanc, testified that part of his job is to intervene when there is a potential for officer complaints:

Q.   Now, you said she was sitting down when you walk in and talk to her.  Was she seated the whole time?

A.   She was seated – actually, the first thing I did when I walked in and approached her was I asked her to step out into the entryway, to separate her from this other group of people so that we could discuss

---

[8] Ex. B at pp. 63-67.

> this incident **with the hope that maybe we could resolve this without making it a criminal issue.**
>
>                    . . .
>
> Q.  Did you in your conversation before you arrested the defendant tell her or suggest to her any alternatives other than arrest.
> A.  **I did.**
> Q. . . . in this matter.
> A.  Id.  Matter of fact, **I actually brought up the point because she was very vocal about being a lawyer that she should know the proper course to deal with this.   One would be she could either, (A) write the business owner a letter comp – you know, complaining about what she was displeased about, or (2) she could file a civil suit for what she felt was the amount she'd been overcharged.** [9]

Ms. Minor admits that she was aware of her option to just

pay the $44 to avoid arrest and criminal prosecution:

> Q.  At some point it was decided that you were going to pay for the group.
> A.  That's right.
> Q.  And you kind of assumed responsibility for the bill then.
> A.  Yes, I'd say by default, yes.
>                    . . .
> Q.  He [Officer Bell] got your side of the story?
> A.  I believe he did.
> Q.  You talked to him.
> A.  I did. I talked to him.
> Q.  He was looking at you?
> A.  Right.

---

[9] Ex. B at pp. 95, 100, 101, 104, 105 (Emphasis Added).

> Q.  And after that, after he'd spoken with
> you, he told you words to the effect of this
> bill needs to be paid, right?
> A.  Or he would arrest me.  Uh-huh.  That's
> what he said, that. . .
> Q.  So Sergeant Leblanc was the . . .
> A.  . . . La Mex wanted to have me arrested.
> Q.  . . third person that told you the bill
> needed to be paid.  Yes?
> A.  Or words to that effect, yes.[10]

The officers reported that they attempted to give Ms. Minor a citation, but she refused to give them her fingerprint so that they could release her, and they had to take Ms. Minor into custody to go before a magistrate.[11]

The court refused to dismiss the case.  It went to trial, and the jury hung.  The criminal case was later dismissed by stipulation when Ms. Minor's attorney agreed to pay the $44 balance.

Ms. Minor then sued both the La Mex defendants and the MOA in state court, alleging false advertisement, false arrest/imprisonment.  Plaintiff also alleges the MOA's violation of plaintiff's civil rights under 43 U.S.C. section 1983.  The MOA removed based on the federal 1983 claim.

---

[10] Ex. B at p. 230.
[11] See Police Report, Ex. F at p.4.

In her recent deposition, Ms. Minor clarified that she is not claiming any lost wages or the $44 balance, as she claims she never paid it.  Ms. Minor does claim $7,500 for attorney's fees incurred in the criminal defense, and damages for emotional distress related to the incident.

La Mex's actions were reasonable.  However, even assuming that La Mex somehow wronged plaintiff, she is barred from recovery of her damages because she could have reasonably avoided her damages by simply not ordering the services from the menu presented to her, and/or by paying the disputed $44 balance.

### III. APPLICABLE LAW

Rule 56 of the Federal Rules of Civil Procedure provides that the court should grant summary judgment if there is no genuine dispute as to the material facts and if the moving party is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Adickes v. S. H. Kress & Co., 398 U.S. 144 (1970).

Once the moving party has met his burden, the non-moving party must set forth evidence of specific facts showing the existence of a genuine issue for trial.  Id.  Anderson v.

<u>Liberty Lobby, Inc.</u>, 477 U.S. 242, 248-49 (1986); <u>Adickes</u>, 398 U.S. at 160, n.22.  The non-moving party may not rest upon mere allegations or denials, but must show that there is sufficient material evidence supporting the claimed factual dispute to require a fact-finder to resolve the parties' differing versions of the truth at trial.  <u>Anderson</u>, 477 U.S. at 248.  A "scintilla" of evidence is not enough to create a genuine issue of material fact.  <u>Anderson</u>, 477 U.S. at 252. Nor do "mere allegations and speculation . . . create a factual dispute for purposes of summary judgment." <u>Nelson v. Pima Community College</u>, 83 F.3d 1075, 1081-82 (9th Cir. 1996). There is no genuine issue of material fact when the relevant evidence in the record, taken as a whole, indicates that a reasonable fact-finder could not return a verdict for the non-moving party.  <u>Anderson</u>, 477 U.S. at 248; <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

## **ARGUMENT**

### **The Avoidable Consequences Rule Bars Plaintiff's Damages Claims**

Assuming for the sake of argument that La Mex's ad in the March 11-17, 2004 edition of the Free Press was ambiguous or

misleading, Ms. Minor could have avoided all of her damages with reasonable efforts.

The Alaska Supreme Court addressed an analogous "avoidable consequences" case in Anchorage Independent School District v. Stephens, 370 P.2d 531 (Alaska 1962). In that case, the school district had illegally reassessed and taxed property owned by Stephens in the amount of $76. No notice was given to Stephens of the assessment, and the school district foreclosed on the tax lien and sold off Stephens' property in October of 1954. Stephens became aware of the sale in January of 1956 when he applied for a bank loan and the title report indicated that his property had been sold to satisfy delinquent taxes.

Stephens waited six months before paying $135 to redeem the property under protest. He then sued the school district seeking $135 for the redemption money and general damages in the form of lost profits from being unable to expand a trailer court during the six months prior to paying the redemption fee. Stephens also asserted a claim for the value of his time spent in consulting his attorney. Stephens was awarded $700

in general damages before the trial court. These damages became the major issue on appeal.

The Alaska Supreme Court stated:

> The general damages Stephens seeks are not recoverable. It is a cardinal rule in the law of damages that a **plaintiff, with an otherwise valid right of action, is denied recovery for so much of the losses as are shown to have resulted from failure on his part to use reasonable efforts to avoid or prevent them. This rule applies whether the action is in tort or breach of contract** and is known as the avoidable consequences rule. The imposition of this rule is a recognition that legal rules are designed not only to prevent and repair individual loss and injustice, but **to protect and conserve the economic welfare and prosperity of the whole community.**

Stephens at 533 (Emphasis Added).

It was undisputed that Stephens could have avoided the general damages by simply paying the $135 to redeem the property instead of waiting six months. When asked why he waited so long, Stephens' only response was that he believed he did not have to pay it. (". . . I did not pay it, because I did not think I had to pay it. I did not think I had to pay what I considered as blackmail in order to preserve a legal remedy." Stephens at 533.)

However, the Supreme Court felt that such an explanation did not justify relieving Stephens of the avoidable consequences rule and held that Stephens, as a matter of law, could not recover for the general damages he sought – just the $135 redemption price.

Similarly, in this case, Michelle Minor is precluded from claiming damages for attorney's fees and emotional distress, because Ms. Minor could have avoided all of those damages by either not ordering from the menu presented, or simply paying the $44 balance.

The Stephens decision was reaffirmed in the later case of Hughes, Thorsness, Gantz, Powell & Brundin v. Bohna:

> As we observed in Anchorage Independent School District v. Stephens, 370 P.2d 531, 533 (Alaska 1962), the rationale behind the duty to mitigate damages "is a recognition that legal rules are designed not only to prevent and repair individual loss and injustice, but to protect and conserve the economic welfare and prosperity of the whole community." **No one's interests are served by allowing a plaintiff to recover as damages that which the plaintiff could have reasonably avoided in the first place.**[12]

---

[12] Hughes, Thorsness, Gantz, Powell & Brundin v. Bohna, 828 P.2d 745, 754 (Alaska 1992) (emphasis added); see also Spruce Equipment Company v. Maloney, 527 P.2d 1295 (Alaska 1974) quoting with approval the avoidable consequences rule articulated in Stephens: "It is a cardinal rule in the law of damages that a plaintiff, with an otherwise valid right of action, is denied recovery for so much of the losses as are shown to have resulted

LA MEX DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT
Minor v. La Mex, Inc., etc., et al., CASE NO. 3:06-cv-00101
PAGE 14

Thus, even assuming for the sake of argument that La Mex wronged plaintiff, any damages from that wrong could have been avoided with reasonable efforts by plaintiff.

Choosing not to order from the menu, or leaving the restaurant, or paying the $44 balance would have served the public interest by avoiding the intervention of the police and criminal court system, while at the same time leaving plaintiff with her civil recourse.[13]

### Plaintiff's Claims Also Fail For Lack Of Causation

A plaintiff may only recover for damages proximately caused by the defendant.[14]    In Alvey v. Pioneer Oilfield

---

from failure on his part to use reasonable efforts to avoid or prevent them. **This rule applies whether the action is in tort or breach of contract and is known as the avoidable consequences rule.**" (Emphasis added.)

[13] She could have called the Consumer Protection Agency, the Better Business Bureau, or filed in Small Claims. Ms. Minor was aware that she had civil remedies.

[14] Under the Consumer Protection Act, a private right of action for false advertising exists only if the plaintiff has been harmed by the violation. AS 45.50.531, "A person who suffers an ascertainable loss of money or property as a result of another person's act . . . may bring a civil action . . . ."; Whitesides v. State, 88 P.3d 147, 150 (Alaska App. 2004) ("By "proximate cause", we mean a physical ("actual") cause which, in the eyes of the law, is significant enough under the circumstances of the case to support a finding that the defendant is responsible for the victim's physical injury. Because "proximate cause" ultimately hinges not only on questions of physical causation but also on questions of law and policy, it can sometimes be a difficult concept to apply. However, in both civil and criminal contexts, the appellate courts of Alaska have stated that a defendant's conduct can normally be viewed as a "proximate cause" of an ensuing injury if the defendant's conduct was a "substantial factor" in causing that injury.")

<u>Services</u>, 648 P.2d 599 (Alaska 1982), an employee of a drilling contractor for Exxon, Alvey, was working on a crew positioning an oil rig over certain holes on an Exxon drill site. The well covers had been removed to facilitate alignment. When the crew finished centering the rig, Alvey went to retrieve a cover, which he mistakenly assumed was one that had been taken from the drill site. The cover actually rested atop a survey hole. When, Alvey picked up the cover, unaware that it protected the survey hole, he fell into the open well. <u>Id</u>. at 600.

The cover was one of six that had been constructed by Pioneer Oilfield Services, Inc. at Exxon's request. An Exxon foreman had furnished Pioneer with a rough sketch and had asked that the covers be strong enough to be walked on and be made so that they could be located in the snow. Pioneer delivered the covers as specified and had no other involvement with the drilling on the site. <u>Id</u>. at 600.

Alvey sued Pioneer and others. His complaint alleged that Pioneer knew or should have known that Alvey was working in the area of the test hole and would have no knowledge of the opening, that Pioneer knew or should have known of the

danger presented by the hole, and that Pioneer failed to warn Alvey of the danger, either personally or by other means.  <u>Id</u>.

The Alaska Supreme Court affirmed summary dismissal of the claims against Pioneer because the plaintiff had failed to offer any evidence of proximate cause.  The court noted that the mere fact that the fall occurred while Alvey was trying to remove a cover made by Pioneer was not sufficient to withstand summary judgment on the proximate cause issue, because nothing in the design or construction of the cover had caused Alvey's fall.  <u>Id</u>.

Here, the single ad in the March 11-17, 2004 issue of the Free Press did not proximately cause plaintiff's harm.  The only prices ever presented to plaintiff were those prices in the menu from which plaintiff ordered.  If plaintiff felt that La Mex had misled her, she could have decided not to order the services for the prices set forth in the menu and/or pay the $44 balance.  Any damages flow from plaintiff's decision to order the services, and her refusal to pay for the services completely.

While plaintiff claims that she thought she would get an undefined discount, on some uncertain dishes, the only prices

plaintiff was ever offered were those in the menu from which she ordered. Plaintiff's decisions, not La Mex's actions, proximately caused her alleged damages.

### The False Arrest Claims Must Be Dismissed

Further, also as a matter of proximate causation, plaintiff's "false arrest" claims against the La Mex defendants are dismissible on the additional basis that there is no liability for false imprisonment when there was no evidence that the citizen signing the arrest form, "gave false information to either the police or the prosecuting agency or that he misled them in any way." Gomez v. Garcia 112 Cal.App.3d 392, 397 (Cal. App. 1980).

There is no evidence in this case that La Mex's manager, Renee Ablecop, gave false information to the police.

Indeed, the arresting officers looked at the menu provided to Ms. Minor; they looked at the ad, interviewed the witnesses, including Ms. Minor, and concluded that there was a sufficient basis to cite Ms. Minor even without the citizen's arrest because the violation was ongoing in their presence. (Ex. B at p. 67.) According to Officer LeBlanc, "In this case it really – wasn't really required because she was refusing to

pay right in front of the police, so the misdemeanor was occurring right in our presence. . . ." (Ex. B at p. 101.)

Given the police officers' belief that a crime had been committed; that the court found sufficient probable cause to let the case go to a jury; and that the jury could not acquit, the La Mex defendants could hardly be faulted for believing that Ms. Minor had broken the law.

Moreover, there was probable cause for the arrest as a matter of law because it is undisputed that plaintiff ordered from the menu but did not intend to pay the menu's prices. [15]

While plaintiff claims her reading of the menu prices was mislead by the March 11-17, 2004 Free Press ad, the ad indicated that the discounts would be in the menu; there were no prices or dishes specified in the ad, and plaintiff did not even have a copy of the ad when she ordered from the menu with the regular prices.

### The Claims Against Trina Johnson Should Be Dismissed

Ms. Johnson's only involvement in the advertisement of the special event was to hire Vicki Evans on behalf of La Mexicana, Inc. as an independent contractor to advertise the

---

[15]  Ex. B at p. 216.

special event for the downtown location.  Ms. Johnson was very busy at the downtown location and was not called in relation to Ms. Minor's disturbance or arrest on the night in question. Ex. A, E and G.

Therefore, there is no evidence that Trina Johnson was involved in the advertisement or arrest so as to serve as a basis of liability against Ms. Johnson.

### Renee Abelcop Was Not Involved In The Advertising

The affidavits of Ms. Evans, Abelcop, and Johnson also evidence that Ms. Abelcop was not involved in preparing the advertisements of the special event. Exs. A, E, and G.  It is undisputed that the special was for La Mex's downtown location, and Ms. Abelcop was the manager for the Spenard location.  Therefore, no claim for false advertisement may lie against Ms. Abelcop.

### CONCLUSION

If plaintiff felt she had been mislead into coming to La Mex's Spenard location, she could have could have avoided all of her damages with the reasonable effort of not ordering from the menu presented to her; of asking the waiter about the discounts she thought she was entitled to; or by paying the

disputed $44 balance.  Plaintiff does not dispute that she had five credit cards and a checking account with available balances of over $1000 apiece to pay the $44.

For all the foregoing reasons, summary judgment should be granted in favor of the La Mex defendants.

DATED this 29th day of September, 2006, at Anchorage, Alaska.

```
                    RICHMOND & QUINN
                    Attorneys for Defendants
                    LA MEX, INC., LA MEXICANA, INC.,
                    TRINA M. JOHNSON, and RENEE
                    ABELCOP


          By:  _____s/Kenneth M. Gutsch_____
                    Kenneth M. Gutsch
                    RICHMOND & QUINN
                    360 K Street, Suite 200
                    Anchorage, AK 99501
                    Ph: (907) 276-5727
                    Fax: (907) 276-2953
                    kgutsch@richmondquinn.com
                    Alaska Bar No. 8811186
```

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was mailed this 29th day of September, 2006, to:

Kenneth P. Jacobus, Esq.
310 K Street, Suite 200
Anchorage, AK 99501-2064

Mary Pinkel, Esq.
Municipality of Anchorage
Division of Law
Assistant Municipal Attorney
P.O. Box 196650
Anchorage, AK 99519


          s/Kenneth M. Gutsch
          RICHMOND & QUINN


108\534\Pld\MSJFinal